# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 21-843V**
TO BE PUBLISHED

ELAINE ZUCKERMAN, *as personal representative of* ESTATE OF BARBARA LANGBURT,

Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.

Chief Special Master Corcoran

Filed: January 31, 2024

**ORDER DENYING MOTION TO DISMISS – SPECIAL PROCESSING UNIT**[1]

On February 2, 2021, Barbara Langburt ("Ms. Langburt") filed a Petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). The Petition alleges that the influenza ("flu") vaccine Ms. Langburt received on December 19, 2018, resulted in her development of Guillain-Barré syndrome ("GBS"). Pet., ECF No. 1. On February 7, 2022, the case caption was amended to reflect that Ms. Langburt had passed away and Elaine Zuckerman ("Petitioner") became the named petitioner, as representative of Ms. Langburt's estate. *See* ECF No. 19. Respondent subsequently filed a Motion to Dismiss for lack of the Court's jurisdiction to hear the claim, arguing the case was filed by an improper petitioner – as Ms. Langburt was deceased at the time the Petition was filed. Respondent's Motion, ECF No. 25.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

After a careful consideration of the question, I find that Petitioner cannot be summarily disqualified from the Program merely because of a defect in filing an otherwise-timely claim. Respondent's Motion to Dismiss is therefore **DENIED.**

## I. Relevant Procedural History

The Petition identifying Ms. Langburt as claimant was filed on February 2, 2021, but with no medical records. Following the submission of the Petition, four motions for extensions of time to file medical records, an affidavit, and statement of completion were filed. ECF Nos. 6-9. In support of each, Petitioner stated that she was "in the process of compiling [the outstanding documents] but require[d] additional time to finalize and file these materials." *See id.* Finally, on October 20, 2021 (*eight months* after the filing of the Petition), the missing materials were finally filed – along with a death certificate for Ms. Langburt and representation that a different individual would be acting on her behalf. ECF Nos. 12-14. Also included was a Motion to Amend/Correct the Case Caption. ECF No. 11.

At this time, it was revealed that Ms. Langburt had passed away a year before – on *October 30, 2020,* (prior to the filing of the Petition) due to complications of COVID-19 – and that Ms. Langburt's sister, Elaine Zuckerman ("Ms. Zuckerman"), intended to act as the personal representative of Ms. Langburt's estate. *Id.* The Motion was filed without supporting documentation showing that Ms. Zuckerman had been appointed as representative of Ms. Langburt's estate, however, nor did it reference when such documentation would become available. *See id.* I subsequently ordered counsel to file the appropriate probate documents in support of the request by December 21, 2021 (prior to the expiration of the statute of limitations for Ms. Langburt's vaccine-injury claim). ECF No. 15. I also noted that the new petitioner should consider whether to amend the petition to include a death claim. *Id.*

On December 20, 2021, counsel filed a motion for extension of time to file such documentation, noting that she "continue[d] to make a diligent attempt" to obtain the required documentation, but that the estate attorney had been unable to file the necessary paperwork "due to issues related to obtaining a timely bond from a bondsman." ECF No. 16. The motion was granted and on February 4, 2022, the necessary probate documentation was filed to establish Ms. Zuckerman as Ms. Langburt's personal representative. ECF Nos. 17-18. The probate order was executed on February 3, 2022. Ex. 14. The case caption was then amended to reflect Ms. Zuckerman as Petitioner in this case on February 7, 2022. ECF No. 19. The Petition was not amended to include a death claim. This matter was assigned to the Special Processing Unit ("SPU"). ECF No. 20.

Rather than filing an informal assessment or Rule 4(c) Report defending this case (as requested), Respondent filed a Motion to Dismiss on November 14, 2022. Respondent's Motion, ECF No. 25. Petitioner subsequently filed a Response on February 24, 2023, followed by Respondent's Reply in April 2023. Petitioner's Response, ECF No. 30; Respondent's Reply, ECF No. 31. This matter is now ripe for consideration.

## II. Legal Standard

The Federal Circuit has stressed that the Vaccine Act was meant "[t]o compensate injured persons quickly and fairly," with "relative certainty and generosity of compensation." *See,* e.g., *Cloer v. Sec'y of Health & Hum. Servs.,* 654 F.3d 1322, 1326 (Fed. Cir. 2011). The remedial nature of legislation like the Vaccine Act should be construed liberally "in a manner that effectuates its underlying spirit and purpose." *See Cloer v. Sec'y of Health & Hum. Servs.,* 675 F.3d 1358, 1362 (Fed. Cir. 2012).

Section 11(b)(1)(A) of the Vaccine Act describes three categories of eligible petitioners in the Vaccine Program. This section defines a proper petitioner as "any person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or is disabled, or the legal representative of any person who died as a result of the administration of a vaccine set forth in the Vaccine Injury Table may, if the person meets the requirements of subsection (c)(1), file a petition for compensation under the Program." The first two categories of proper petitioners thus apply to persons alive at the time the petition was filed. *Buxkemper v. Sec'y of Health & Hum. Servs.*, 32 Fed. Cl. 213, 225 (1994). The third category applies to the legal representatives of those who died as a result of the administration of a vaccine set forth in the Vaccine Injury Table. § 11(b)(1)(A).

The Federal Circuit has noted, however, that Section 11(b)(1)(A) is not an exhaustive list of who may bring a claim in the Program. *Figueroa v. Sec'y of Health & Hum. Servs.*, 715 F.3d 1314, 1317 (Fed. Cir. 2013). Rather, in the case of a person who is alleged to have suffered a vaccine-related injury but died from *non-vaccine related causes*, an injury claim survives the vaccinee's death in certain circumstances, and an appropriate individual can advance the surviving claim. In *Figueroa*, an individual suffered alleged vaccine-related GBS and later died from pancreatic cancer. *Figueroa,* 715 F.3d at 1315. Following his death, the injured party's widow (who had already been named the personal representative of his estate) filed a claim for compensation on behalf of Mr. Figueroa. *Id.* The Federal Circuit stated it was undisputed that the personal representative of the estate may assert an injury claim in certain situations, including where the petition was filed before the death of the injured person who subsequently dies from either vaccine-related or non-vaccine related causes. *Id.* at 1317. The legal representative of Mr. Figueroa's estate was thus qualified as a proper petitioner. *Id.* at 1321-24. The Circuit

noted it was inconsistent with the fundamental objectives of the Vaccine Act to treat Mr. Figueroa differently merely because the petition had been filed after his death. *Id.* at 1317, 1321.

The Vaccine Rules also address the issue of who may file a petition in the Program, and they seem to reflect the reasoning of *Figueroa*. Vaccine Rule 2(c)(2)(C) states that "[i]f the petition is filed on behalf of a deceased person or is filed by an individual other than the injured person or the parent of an injured minor, the petition must also be accompanied by documents establishing the authority to file in a representative capacity or a statement explaining when such documentation will be available."

Also relevant to the present dispute are other components directly, or indirectly, bearing on jurisdiction. First, the jurisdiction of the U.S. Court of Federal Claims in Vaccine Act cases is determined at the time the petition was filed. *Ling v. Sec'y of Health & Hum. Servs.*, 145 Fed. Cl. 778, 783 (2019) (citing *Zavala v. Sec'y of Health & Hum. Servs.*, No. 03-1337, 2006 WL 5616331, at *4 (Fed. Cl. Spec. Mstr. Jan. 18, 2006)). Second, under the Vaccine Act's statutory limitations period, a petition must be filed prior to "the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of the onset or of the significant aggravation of the [alleged] injury." 42 U.S.C. § 300aa-16(a)(2); *Cloer*, 654 F.3d at 1335 (finding that the first symptom or manifestation of onset of a given injury must be recognized as such by the medical profession at large).

## III. Parties' Arguments

### a. Respondent's Motion to Dismiss

Respondent asserts that "[b]ecause Ms. Langburt was deceased at the time the petition was filed . . . the Court lacks jurisdiction to act on the claims asserted therein." Respondent's Motion at 3. In effect, the claim was "void *ab initio* because the named Petitioner was not a proper petitioner" pursuant to any category described in Section 11(b)(1)(A) of the Vaccine Act. *Id.* at 3-4. In addition, "at the time the petition was filed, there was no individual named as the legal representative of Ms. Langburt's estate," and "no provision of the Vaccine Act permits deceased persons to file claims in the Vaccine Program." *Id.* at 4.

Indeed, as the record establishes, Ms. Langburt passed away approximately "105 days before [counsel] filed a petition for [] compensation identifying Ms. Langburt as the petitioner[.]" Respondent's Motion at 5. Yet, the Petition itself seems to suggest the Petitioner was then alive. *See,* e.g., *id.* at 2, 5 (stating that Ms. Langburt "*continued* 'to

suffer sequela as a result of her GBS.'") (citing Pet. at 2) (emphasis in original). Thus, Ms. Langburt's death "was not disclosed until more than eight months [after filing of the petition]" and it "was not until one year *after* the petition was filed" that Ms. Zuckerman was appointed personal representative of Ms. Langburt's estate. *Id.* at 5 (citing Ex. 14 at 1) (emphasis in original). Therefore, there was no proper petitioner at the time of filing pursuant to Section 11(b)(1)(A) or *Figueroa*.

Respondent further asserts that the 2022 amendment of the Petition to identify Ms. Zuckerman as claimant cannot cure the filing defect, and thus the claim is now untimely. Respondent's Motion at 3-4. As support, Respondent notes that the record shows the onset of Ms. Langburt's injury beginning in late December 2018 (i.e., she presented to her treater on December 25, 2018, complaining of numbness and tingling "for several days"), and any claim brought on her behalf would therefore have to be filed by late December 2021. *Id.* at 7 (citing Ex. 2 at 22; § 16(a)(2)). Yet, Respondent highlights that Ms. Zuckerman was not appointed as representative of Ms. Langburt's estate until February 3, 2022, after the statute of limitations had expired; thus, the claim must be dismissed. *Id.* (citing Ex. 14 at 1).

**b. Petitioner's Response**

Petitioner contends that the fact that her counsel lacked knowledge of Ms. Langburt's death does not eliminate jurisdiction, or render the claim untimely. Petitioner's Response at 9. Rather, efforts were made to correct the problem as soon as it was recognized. *Id.* at 17. Thus, Respondent's "suggestion" that counsel "took any action that was unauthorized by her clients . . . is simply not borne out o[f] this record." *Id.*

As support, Petitioner provides a timeline of Ms. Langburt's representation. Petitioner's Response at 1. Ms. Langburt first contacted counsel to represent her in the instant claim in February 2019 (hence prior to her death). *Id.* at 2. Ms. Langburt signed the firm's "Intake Questionnaire" and "HIPAA Compliant Authorization Form," on March 7, 2019. *Id.* According to counsel, as of May 20, 2020, Ms. Langburt was in active contact with the firm's senior paralegal regarding the need for additional medical records, including Explanation of Benefits ("EOBs") forms from her insurance company. *Id.* at 3. Counsel continues that on September 13, 2020, the firm's senior paralegal sent an email to Ms. Langburt regarding the outstanding records and EOBs, but Ms. Langburt did not respond to this email. *Id.*

Accordingly, "[u]naware of her client's death," and "[a]s Ms. Langburt's attorney of record for her injury claim, and acting on her specific instructions, counsel . . . compiled all of Ms. Langburt's medical records and filed her petition on February 2, 2021."

Petitioner's Response at 3. The same day, the senior paralegal sent an email to Ms. Langburt stating that the Petition had been filed and providing her with routine information related to her claim. *Id.* at 3-4. One day later, on February 3, 2021, Ms. Langburt's sister, Ms. Zuckerman, responded to the email informing counsel that Ms. Langburt had passed away on October 30, 2020. *Id.* at 4.

On February 12, 2021, counsel discussed with Ms. Zuckerman the need to consult with an estate attorney in Ms. Langburt's home state. Petitioner's Response at 4. Ms. Zuckerman obtained a probate attorney, and on March 5, 2021, counsel had a conference call with Ms. Zuckerman and her probate attorney. *Id*. According to counsel, as Ms. Langburt's next of kin, Ms. Zuckerman subsequently sought the probate attorney have her appointed as personal representative of Ms. Langburt's estate. *Id.*

Counsel notes that Ms. Zuckerman's affidavit, authored and filed on October 20, 2021, (along with the Motion to Amend the Case Caption) states that she was "continuing [Ms. Langburt's] vaccine claim on her behalf." Petitioner's Response at 4; Ex. 13. She acknowledges that the documentation appointing Ms. Zuckerman as legal representative of Ms. Langburt's estate was not executed or filed until February 2022, however. Petitioner's Response at 5-6. During this gap, Ms. Zuckerman and her probate attorney were making efforts to have Ms. Zuckerman appointed as legal representative, but an issue arose in December 2021, when the probate attorney could not secure the $18,000 bond needed to obtain the necessary documentation by the allotted deadline. *Id.* at 5. Counsel maintains that she appropriately cured the filing defect as to standing by substituting Ms. Zuckerman as the state-appointed legal representative of Ms. Langburt's estate. *Id.* at 10-11. Petitioner stresses that the "remedial purpose of the Act should [] weigh heavily in Petitioner's favor." *Id.* at 16.

To defend this lapse in correcting the Petition in a more timely fashion, Petitioner references *Corum v. Sec'y of Health & Hum. Servs.,* which (counsel contends) discusses the issue of "curing" a standing defect by way of substituting a legal representative after a petition is filed. Petitioner's Response at 14-15 (citing No. 20-210V, 2022 WL 3225436, at *8 (Fed. Cl. Spec. Mstr. July 12, 2022)). In *Corum*, the petitioner (Ms. Corum) filed a petition as the legal representative of the estate of her deceased husband, on behalf of the estate of her deceased father-in-law. 2022 WL 3225436, at *1. However, documentation of Ms. Corum's legal capacity to bring the claim was not filed along with the petition, and Ms. Corum was subsequently ordered to produce the required documentation. *See id.* Ms. Corum was unsuccessful in doing so. *Id.* The special master responsible for the matter acknowledged that "Vaccine Rule 2(c) contemplates that documentation of representative capacity may not be immediately available at the time a petition is filed. *Id.* at *7. Still, the claim was dismissed based on the finding that Ms.

Corum lacked standing, as "[t]here is no evidence available on this record to conclude petitioner was ever the legal representative of the decedent vaccinee . . . such that she would be permitted to bring a claim on behalf of [Mr. Corum's] estate under the Vaccine Act." *Id.* at *8. Here, by contrast, Ms. Zuckerman was properly appointed as legal representative of her sister's estate, and "any standing issue has now been appropriately cured." Petitioner's Response at 15.

### c. Respondent's Reply

Respondent's Reply observes that at the time the Petition was filed on February 2, 2021, counsel had not spoken to Ms. Langburt for more than five months. Respondent's Reply at 1. Respondent continues that "[u]pon learning of Ms. Langburt's passing later in February 2021, counsel had ten more months within the statute of limitations (until December 2021) to dismiss the filed petition without prejudice and refile" listing the legal representative (Ms. Zuckerman) as the petitioner but she did not. *Id.* at 1-2. Respondent attacks Petitioner's reliance on the *Corum* case because the petition in that case named a personal representative at the time of filing; the issue to be decided was whether the documentation supporting such appointment would be forthcoming; it ultimately was not filed. *Id.* at 1, n.1 (citing *Corum*, 2022 WL 3225436, at *8). Respondent therefore maintains the claim must be dismissed. *Id.* at 3.

## IV. Discussion

Respondent is correct in asserting that Ms. Langburt does not *herself* meet any of the categories of proper petitioners as defined by the Vaccine Act, as she was deceased at the time of filing. *See* § 11(b)(1)(A); *see also Figueroa,* 715 F.3d at 1321. It is not in the plain reading of the Vaccine Rules or Act to allow a deceased petitioner to file on her own behalf; rather such a claim must be advanced by the legal representative on behalf of the vaccinee's estate. It thus appears that Ms. Langburt's Petition was literally defective, as she lacked representative standing at the time the Petition was filed.

At the same time, several other factors must be considered in this case, including the actions of counsel in filing an otherwise timely vaccine-injury petition pursuant to her client's pre-death wishes, and the underlying remedial nature of the Vaccine Program. Such factors weigh in favor of curing an otherwise defective petition (and despite counsel's overall dilatory conduct in resolving the problem).

In particular, the record establishes that before her death, Ms. Langburt intended to file a vaccine injury claim, and took steps to do so. Then, the claim was filed in accordance with her plan (albeit after her death), well within the statute of limitations for a vaccine-injury claim (36 months from the date of onset). § 16(a)(2). Indeed, the parties

appear to agree that the record supports onset of Ms. Langburt's GBS symptoms by late December 2018, and the Petition, filed on February 2, 2021, was thus filed within 36 months of the onset of Ms. Langburt's GBS symptoms. *See Cloer,* 654 F.3d at 1335 (holding that the statute of limitations in the Vaccine Act "begins to run on the date of the occurrence of the first symptom or manifestation of onset of the vaccine-related injury[.]").

This then raises the threshold question of whether an otherwise-timely petition can be cured of a filing defect as a general matter. I find it can.

First, the very fact that claims can be filed for a decedent (and hence after their death) suggests that filing errors in such a claim *should be capable* of remediation. Although not specifically addressed in *Figueroa*, the Federal Circuit – in arriving at the conclusion that a personal representative of an injured individual's estate may file a petition on that cause of action – had to resolve the issue of whether an injured individual's cause of action survives his or her death. *See* 715 F.3d at 1318-19. The Court concluded that "injury claims necessarily survive the death of the injured party." *Id.* at 1321. The Federal Circuit acknowledged that "[t]he language of the Act does not speak to" this issue. *Id.* at 1318.

However, "it is well established that the background rule is that remedial claims survive the death of the injured party." *Figueroa,* 715 F.3d at 1318-19 (citing *Phillips v. Shinseki,* 581 F.3d 1358, 1367 (Fed. Cir. 2009) (recognizing that "the basic federal rule is that an action for a penalty does not survive, though remedial actions do."); *Faircloth v. Finesod,* 938 F.2d 513, 518 (4th Cir. 1991)). The Federal Circuit noted that "our sister circuits have repeatedly and appropriately held that remedial claims survive even where federal statutes fail to provide for survivorship." *Id.* at 1320. As a petition for compensation under the Vaccine Act is remedial, "the presumption is that it survives, in the absence of a statutory provision to the contrary." *Id.* at 1319 (citing *Cloer,* 675 F.3d at 1362 (noting that "[r]emedial legislation like the Vaccine Act should be construed in a manner that effectuates its underlying spirit and purpose.")). Applying the logic in *Figueroa*, the petition claiming a vaccine-related injury filed by counsel, with a good faith belief that counsel was acting in accordance with Ms. Langburt's wishes and previous instructions, ought to survive Ms. Langburt's death that was unknown to counsel at the time of filing.

Second, efforts were made to cure the defect in Ms. Langburt's Petition, by counsel's filing of Petitioner's Motion to Amend the Case Caption – and these efforts were made prior to the expiration of the statute of limitations (on October 20, 2021). Of course, these efforts were somewhat inadequate, since Petitioner's Motion did not include supporting documentation showing that Petitioner was appointed the legal representative

of Ms. Langburt's estate. But this shows some diligence at addressing the problem before the expiration of the Act's three-year statute.

Despite the above, there is another issue to be resolved – and that is the effect of resolving a filing defect *after* the limitations period has run. For in this case, Petitioner was not legally appointed as the legal representative of Ms. Langburt's estate by a probate court until *after* the expiration of the statute of limitations – on February 3, 2022.

Relevant case law establishes that a "defective filing still means that there was some claim made albeit defective." *Maack v. Sec'y of Health & Hum. Servs.,* No. 12-354V, 2013 WL 4718924, at *3 (Fed. Cl. Spec. Mstr. Aug. 6, 2013). And relatedly, "statutes of limitations are primarily designed to assure fairness to defendants." *Burnett v. New York Central Railroad Co.,* 380 U.S. 424, 426 (1965) ("[W]hen process has been adequate to bring in the parties and to start the case on a course of judicial handling which may lead to final judgment without issuance of new initial process, it is enough to commence the action" under federal law).

One way to deal with untimely-filed claims, where some reasonable excuse explains when the matter was initiated, is via the doctrine of equitable tolling. *See,* e.g., *Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). A petitioner requesting equitable tolling must establish "two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace,* 544 U.S. at 418 (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)). The Federal Circuit has recognized that equitable tolling can apply in the context of Vaccine Act claims. *Cloer,* 654 F.3d at 1322, 1340-44. Equitable tolling is unavailable where an untimely filing is due to unawareness of a causal link between an injury and administration of a vaccine (*Id.* at 1344), but could excuse late filings in other circumstances. Nevertheless, the Circuit acknowledged, the doctrine was to be used "sparingly." *Id.* at 1344-45 (citing *Irwin*, 498 U.S. at 96). And it always remains the case that "[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin County Welcome Ctr.,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984); *see also Irwin,* 498 U.S. at 96 ("the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect").

All of the above suggests that tolling is especially appropriate where filing efforts were made in a timely manner – despite when the filing errors were cured. In *Irwin*, the Supreme Court noted that "[w]e have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a [procedurally] defective pleading during the statutory period . . . . We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his

legal rights." *See* 498 U.S. at 96, 111 S.Ct. 453, 457-58. In effect, if a claim's late filing can be excused (where proper circumstances for tolling arise), a claim that was to some extent filed in a timely manner should equally be capable of cure.

This reasoning seems to have "saved" other improperly-filed claims in prior Vaccine Act matters. In one such case, a *pro se* claimant sent his petition to Respondent by mail within the statute of limitations, but did not file it at that time. *See Askew v. Sec'y of Health & Hum. Servs.*, No. 10-767V, 2012 WL 2061804, at *6 (Fed. Cl. Spec. Mstr. May 17, 2012). The Special Master found that Respondent's receipt of the petition and supporting documentation before the expiration of the statute of limitations "were sufficient to put the secretary on notice of the claim and commence the process of adjudication," even though it was defective in not being filed. *Id.* at *9. The statute of limitations was thus tolled at the time of Respondent's receipt of the petition. *See id.*

Given the foregoing, I find that the failure of Petitioner to cure the filing defect in a timely manner should not result in dismissal, applying the equitable tolling doctrine. The record establishes that Petitioner pursued her rights to become the legal representative of Ms. Langburt's estate diligently. Once she spoke to Ms. Langburt's counsel following Ms. Langburt's death, Petitioner fairly quickly conferred with a probate attorney in another state to begin undertaking efforts to become appointed the administrator of Ms. Langburt's estate. Indeed, Petitioner notified counsel of Ms. Langburt's passing on February 3, 2021. By March 5, 2021, Petitioner had retained a probate attorney and all involved parties had a conference call to discuss next steps and how to proceed. It does not appear that this is a case where Petitioner could have been pursuing this claim (and intrinsically her representation of Ms. Langburt's estate) prior to February 2021 – at the time she received an email that Ms. Langburt's claim had been filed. Once Petitioner learned of the existence of the claim, she took the necessary steps to begin the probate appointment process. And the timely appointment of Petitioner as the legal representative of Ms. Langburt's estate was thwarted by a monetary bond and administrative paperwork.

Moreover, there is no prejudice to Respondent herein. Respondent was put on notice of the claim at the time of its filing (which was properly performed at the correct tribunal, even if the identified petitioner was erroneous). Later, in October 2021, Respondent learned (also prior to the statute's running) of Ms. Langburt's death, and Petitioner's intent to substitute into the case. Although the administrative steps to "perfect" the substitution did not occur at that time, they eventually did. It often occurs in the Program that claimants die while a matter is pending, and efforts to add an estate representative can take time. *See,* e.g., *Corum,* 2022 WL 3225436, at *7 (affording a petitioner ample time and opportunity to provide documentation establishing her as the legal representative of an estate "because Vaccine Rule 2(c) contemplates that

documentation of representative capacity may not be immediately available at the time a petition is filed").

Indeed, the Court has refused to dismiss claims where that effort took longer than the Vaccine Rules appeared to allow. *See,* e.g., *Snyder v. Sec'y of Health & Hum. Servs.,* 69 Fed. Cl. 390, 392 (2006) (wherein a legal representative of an estate failed to be appointed within the statutory timeframe, but finding that "[t]his Court and the deceased party's counsel would have little, if any, control over the pace of the probate proceedings in [another state and] . . . we decline to follow the 'rather draconian suggestion' that the petitioner should lose her claim simply because the [other state] appointment of a legal representative had not been perfected within [the statutory timeframe]."); *Christner v. Sec'y of Health & Hum. Servs.,* 145 Fed. Cl. 633, 635 (2019) (finding that despite petitioner's counsel failing to timely file a motion for substitution, it was appropriate to give the proper party, who had since been identified as the estate administrator, time to file a motion to substitute, as the proper party could not have known about the proceeding prior to the claim's dismissal because she was not served).

Accordingly, this is a matter in which the delay in curing the filing defect of identifying Ms. Zuckerman as the party petitioner, on Ms. Langburt's behalf, is best resolved by deeming the limitations period tolled – from October 20, 2021 (when Petitioner first endeavored to make the petitioner substitution) to February 7, 2022 (when it was accomplished). Since the statute of limitations ran to (approximately) December 21, 2021 (or 62 days from October 20, 2021), this renders the filing in February 2022 timely.

## Conclusion

Based on the aforementioned discussion, Respondent's Motion to Dismiss is hereby **DENIED. <u>By no later than Friday, March 1, 2024</u>,** Respondent shall file a status report indicating how he intends to proceed in this case, including whether he is open to tentative settlement discussions or whether he intends to proceed on a litigation track, and/or proposing further proceedings such as prompt completion of briefing on Petitioner's Table claim, or transfer out of SPU.

Any questions about this Order or about this case generally may be directed to OSM staff attorney **Alyssa Murphy at (202) 357-6446 or alyssa_murphy@cfc.uscourts.gov.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master